**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**REDELL SEDAT IRVING,**

|                          |                                            |
|--------------------------|--------------------------------------------|
| **Plaintiff,**           | **CIVIL ACTION NO. 12-10032**              |
| **vs.**                  |                                            |
|                          | **DISTRICT JUDGE JULIAN ABELE COOK**       |
| **COMMISSIONER OF**      | **MAGISTRATE JUDGE MONA K. MAJZOUB**       |
| **SOCIAL SECURITY,**     |                                            |
| **Defendant.**           |                                            |

_____/

## REPORT AND RECOMMENDATION

**I.     RECOMMENDATION:**  This Court recommends that Plaintiff's motion for summary judgment (docket no. 16) should be denied, Defendant's motion for summary judgment (docket no. 17) should be granted, and Plaintiff's complaint should be dismissed.

**II.     PROCEDURAL HISTORY:**

Plaintiff filed an application for supplemental security income on August 24, 2009, alleging disability beginning October 29, 2008.  (TR 71-76).  The Social Security Administration denied benefits and Plaintiff filed a timely request for a *de novo* hearing.  On July 27, 2010 Plaintiff appeared with counsel in Oak Park, Michigan and testified at a hearing held before Administrative Law Judge (ALJ) Jerome B. Blum.  (TR 26-41).  Vocational Expert (VE) Pauline Pegram also appeared and testified at the hearing.  In a November 9, 2010 decision the ALJ found that Plaintiff was not entitled to disability benefits because he remained capable of performing a full range of work at all exertional levels to include his past relevant work as a cook.  (TR 12-19).  The Appeals Council declined to review the ALJ's decision and Plaintiff filed a timely *pro se* complaint for

1

judicial review.  The parties filed cross motions for summary judgment which are currently before the Court.

### III.   PLAINTIFF'S TESTIMONY AND MEDICAL EVIDENCE

### A.   Plaintiff's Testimony

Plaintiff was two months shy of fifty-two years old on his alleged disability onset date.  He did not complete high school but he obtained a GED in 1986.  (TR 29).  He has one year of college education.  (TR 147).  Plaintiff lives in a house with his brother and he worked as a chef.  (TR 31, 35).  He testified that he has no physical impairments that prevent him from working, however he states that he is unable to work due to mental health issues.  (TR 29, 33).  Plaintiff states that he suffers from depression and because of that he stays in the house during the day, closes the windows, and doesn't let anyone in.  (TR 30).  He claims to have three to four bad days each week where he will sit in the house all day.  (TR 33).  He reports that he takes Paxil, Zoloft, and Sinequan.  (TR 37).  Plaintiff states that he stopped using cocaine in 2005 when he was released from prison, but he still smokes marijuana and drinks one beer a day.  (TR 34-35).

Plaintiff testified that he is able to cook, clean the house, wash laundry, and take out the garbage.  (TR 31-32).  He takes his brother grocery shopping because he has a difficult time getting along with people.  (TR 32).  He testified that he has no difficulty taking care of his personal hygiene and self-care.  He states that he watches television approximately eight hours every day.  Plaintiff testified that he takes medication at night that makes him sleep, but he claims he can't sleep at night. (TR 30-31).  Instead, he claims that he walks and paces the floor at night and he sleeps during the day, generally taking two to three naps each day for two to three hours at a time.  (TR 31).

### B.   Medical Evidence

2

Plaintiff was evaluated by Nick Boneff, Ph.D., a licensed psychologist, on October 19, 2009 for the state disability determination service. (TR 130-33). Plaintiff reported that he had five prior psychiatric hospitalizations and claimed that he swallowed razor blades and cut his wrist in the past. Dr. Boneff noted that he reviewed past medical records supplied to him by Plaintiff which showed that Plaintiff's claims that he swallowed razor blades were never substantiated by x-rays. Dr. Boneff noted that Plaintiff had been discharged from all previous hospitalizations with an Axis I diagnosis of malingering. The doctor also noted that Plaintiff's medical records indicated that he used threats of harming himself or others as a means of manipulation. Dr. Boneff found that Plaintiff appeared to exaggerate his difficulties to try to achieve secondary gain. On examination Plaintiff could recall five objects forward and four backward, three of three objects after a three minute delay, identify past Presidents, and name three large cities. The doctor found that Plaintiff demonstrated slight to moderate cognitive strengths with relatively intact capacities for immediate and short term memory and the ability to pay attention. He found that Plaintiff demonstrated some strengths as well as some difficulties in concentration. He found that Plaintiff has the cognitive capacity to be able to engage successfully in work activities of at least a simple to moderate degree of difficulty remembering and executing a several step procedure on a sustained basis, but he questioned Plaintiff's motivation to work. Dr. Boneff diagnosed Plaintiff with cannabis abuse in partial remission, mixed personality disorder with narcissistic, antisocial and dependent features, and assigned Plaintiff a GAF of 46.

Dr. Kokila Sheth completed a psychiatric review technique and mental residual functional capacity on November 23, 2009. (TR 135-52). In the psychiatric review technique Dr. Sheth found that Plaintiff exhibited a personality disorder characterized by inflexible and maladaptive personality traits as evidenced by pathologically inappropriate suspiciousness or hostility, and pathological

dependence, passivity, or aggressivity. The doctor determined, however, that Plaintiff failed to satisfy any of the Part B criteria for personality disorders under listing 12.08. Specifically, the doctor concluded that Plaintiff suffered mild restrictions in activities of daily living, moderate difficulties in maintaining concentration, persistence or pace and social functioning, and no episodes of decompensation. The doctor concluded that Plaintiff retained the mental residual functional capacity to perform simple unskilled work on a sustained basis and recommended that he avoid excessive social interaction. In the mental residual functional capacity assessment, Dr. Sheth found that Plaintiff was moderately limited in his ability to understand and remember detailed instructions, maintain attention and concentration for extended periods, accept instructions and respond appropriately to criticism from supervisors, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, and respond appropriately to changes in the work setting. (TR 149-50).

Treatment notes from New Center Community Mental Health Services indicate that Plaintiff was treated for depression by Dr. William Martin from approximately August 2009 through April 2010. (TR 162-69). Plaintiff was started on Zoloft. He was diagnosed with major depressive disorder, recurrent severe without psychotic features, nicotine dependence, polysubstance dependence, pain in the thoracic spine, and assigned a GAF of 50.

Plaintiff was treated at Detroit Receiving Hospital between July 29, 2009 and May 22, 2010. (TR 171-85). He initially presented with complaints of back pain secondary to muscle strain. The examiner noted that Plaintiff was well-groomed, in no acute distress, alert and oriented to three spheres, and demonstrated appropriate mood and affect. Physical examination revealed palpable tenderness in the bilateral paraspinal musculature of the lumbar region but no significant swelling

4

or spasm. Plaintiff had full strength in his bilateral lower extremities.  His sitting straight leg raise

testing was negative, and his patellar reflexes were intact and appropriate.  The examiner diagnosed

Plaintiff with muscular strain focused in the bilateral paraspinal musculature and prescribed Vicodin.

Plaintiff presented with complaints of back and left shoulder pain in December 2009.  In February

2010 he presented with complaints of pain at a level ten on a ten point scale.  (TR 179).  On physical

examination, the examiner noted that Plaintiff had full muscle strength, normal gait and station, with

normal sensation to light palpation of all the extremities and normal sensation.  Plaintiff had some

midback pain that was worse with movement.  He requested Vicodin and did receive a prescription

for a small amount but he was instructed to establish a primary care physician relationship.  (TR

180-81).  Plaintiff presented in May 2010 requesting a refill on Sinequan, which he claimed to take

for depression and sleep.  (TR 174-78).  The examiner noted that he was calm, non-violent, and

presented with no symptoms of depression, psychosis or mania.  The examiner suggested Plaintiff

go to the emergency department. Emergency room treatment notes state that Plaintiff presented with

complaints of right-sided back pain at a level seven on a ten point pain scale.  The examiner noted

that Plaintiff could move all four extremities and flex and extend his hip without difficulty.  Plaintiff

was prescribed Tylenol #3 with a recommendation that he follow-up with physical therapy.

## IV.    VOCATIONAL EXPERT TESTIMONY

The VE testified that Plaintiff's past work as a chef/cook was classified as skilled work with

a light exertional level if classified as chef, and medium exertional level if classified as cook and as

performed by Plaintiff.  (TR 39-40).  The VE testified that without physical limitations there was

nothing that would preclude Plaintiff from returning to this type of work.  (TR 40).  When

questioned by the ALJ, the VE testified that Plaintiff would not be able to return to his previous

work if his testimony concerning his moods, involuntary fatigue and sleep, socialization problems, interpersonal relationships, and paranoia were considered credible. The VE testified that competitive work would be precluded if Plaintiff missed more than one to two days of work per month.

## V.      ADMINISTRATIVE LAW JUDGE'S DETERMINATION

The ALJ found that although Plaintiff has not engaged in substantial gainful activity since his application date of August 24, 2009, and suffers from the severe impairments of mixed personality disorder and history of polysubstance abuse, he did not have an impairment or combination of impairments that meets or equals the Listing of Impairments. (TR 14-15).

The ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but with the nonexertional limitation that he must avoid excessive social interaction. (TR 15-18). The ALJ concluded that because Plaintiff is capable of performing his past relevant work as a cook he is not under a disability as defined in the Social Security Act. (TR 18-19).

## VI.     LAW AND ANALYSIS

## A.      Standard Of Review

Pursuant to 42 U.S.C. § 405(g), the district court has jurisdiction to review the Commissioner's final decisions. Judicial review under this statute is limited to determining whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner's decision employed the proper legal standards. *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is " 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

6

*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

In determining the existence of substantial evidence, the court must examine the administrative record as a whole. *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even if the reviewing court would decide the matter differently, *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983), and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**B.      Framework for Social Security Disability Determinations**

Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff was required to show that:

1. he was not engaged in substantial gainful employment; and
2. he suffered from a severe impairment; and
3. the impairment met or was medically equal to a "listed impairment;" or
4. he did not have the residual functional capacity to perform his past relevant work.

20 C.F.R. § 416.920(a)-(f). If Plaintiff's impairments prevented him from doing his past relevant work, the Commissioner, at step five, would consider Plaintiff's residual functional capacity, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [plaintiff] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health & Human Servs.,* 820 F.2d 777, 779 (6th Cir. 1987) (citation omitted). This "substantial evidence" may be in the form of vocational expert testimony

7

in response to a hypothetical question if the question accurately portrays the plaintiff's physical and mental impairments. *Id.* (citations omitted).

## C.    Analysis

Plaintiff appears before this Court *pro se* and argues only that the evidence of record supports his claim of disability. He claims that he became gainfully employed as a dishwasher on April 16, 2012 and asks the Court to find that he was disabled from August 24, 2009, the date of his application, until April 16, 2012, the date he became gainfully employed.

The claimant bears the burden of proving that he suffers from physical or mental impairments that create such severe limitations that he is precluded from performing his past relevant work through step four of the five step sequential analysis. *Jones v. Comm'r,* 336 F.3d 469, 474 (6th Cir. 2003). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after [his] application date." *Casey v. Sec'y of Health & Human Servs,* 987 F.2d 1230, 1233 (6th Cir. 1993). A claimant is disabled if he is unable to perform "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a). On review the district court must affirm the Commissioner's findings if they are supported by substantial evidence and the Commissioner employed the proper legal standard. *Walters*, 127 F.3d at 528.

In steps one through three of the five step analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 24, 2009, suffered from the severe impairments of mixed personality disorder and history of polysubstance abuse, and did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. The

8

ALJ discussed that Plaintiff has mild difficulties in activities of daily living, moderate difficulties in maintaining concentration, persistence or pace and social functioning, and he has never experienced an episode of decompensation of an extended duration.  The ALJ's determination at steps one through three are supported by substantial evidence in the record and should not be disturbed.

After reviewing the evidence of record, the ALJ determined that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels but he required a nonexertional limitation that he avoid excessive social interaction.  Consequently, at step four of the five step sequential analysis the ALJ found that Plaintiff remained capable of performing his past relevant work as a cook.

In crafting the residual functional capacity and making the step four determination, the ALJ reviewed evidence that tended to support Plaintiff's claim of disability along with evidence that supported the opposite conclusion.  The ALJ considered Plaintiff's statements that he experiences stress in the work environment and suffers from antisocial and narcissistic personality disorders. However, the ALJ noted that despite Plaintiff's limiting claims, his activities of daily living showed that he was able to take care of his personal needs, cook, clean, wash laundry, shop, pay bills, watch television, and use public transportation among other things.  The ALJ next considered the medical evidence and noted that treatment notes in the record did not support Plaintiff's allegations of disabling conditions.  After reviewing the evidence of record the ALJ concluded that Plaintiff experiences some limitations but only to the extent described in the residual functional capacity. The

9

ALJ's residual functional capacity determination is supported by substantial evidence in the record and should not be disturbed.

Next, the ALJ discussed the VE's testimony that Plaintiff's past work as a cook was a skilled light exertional level job. The ALJ then concluded based on the VE's testimony that Plaintiff's residual functional capacity did not preclude such work. In actuality, the VE testified that the job of cook was a skilled medium exertional level job as described by Plaintiff and as characterized in the Dictionary of Occupational Titles (DOT), whereas the job of chef was a light exertional job. Neither exertion level is precluded by Plaintiff's residual functional capacity.

The ALJ found that Plaintiff has not been under a disability since August 24, 2009, the date the application was filed, until November 10, 2010, the date of the ALJ's decision. The undersigned concludes that the ALJ's decision denying benefits employed the proper legal standard and is supported by substantial evidence on the record. Consequently, it is the undersigned's recommendation that Defendant's motion for summary judgment be granted, Plaintiff's motion for summary judgment be denied, and Plaintiff's complaint be dismissed.

**REVIEW OF REPORT AND RECOMMENDATION:**

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir.

10

1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may rule without awaiting the response.


Dated: January 29, 2013                    s/ Mona K. Majzoub_____
                                           MONA K. MAJZOUB
                                           UNITED STATES MAGISTRATE JUDGE


## PROOF OF SERVICE

I hereby certify that a copy of this Report and Recommendation was served upon Redell Sedat Irving and Counsel of Record on this date.


Dated: January 29, 2013                    s/ Lisa C. Bartlett___
                                           Case Manager